# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **BETSEY J. GRANT**, of the Town of Hancock, County of Hancock, State of Maine, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| **MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES**, an agency of the State of Maine, | ) ) ) ) |
| and | ) ) |
| **JANET S. WHITTEN**, in her official and individual capacities as Children's Licensing & Investigation Manager of the Maine Department of Health and Human Services, | ) ) ) ) ) ) |
| and | ) ) |
| **JOHN FEENEY**, in his official and individual capacities as Chief Operating Officer of the Maine Department of Health and Human Services, | ) ) ) ) ) |
| and | ) ) |
| **BOBBI JOHNSON**, in her official and individual capacities as Director of the Maine Department of Health and Human Services, | ) ) ) ) ) |
| and | ) ) |
| **CHERYL COGGER**, in her official and individual capacities as Out-of-Home Investigator of the Maine Department of Health and Human Services, | ) ) ) ) ) |
| and | ) ) |
| **ELIZABETH BURNHAM**, in her official and individual capacities as a Child Care Licensing | ) ) |

Case No.

1

| | |
|---|---|
| Specialist of the Maine Department of Health and Human Services, | )<br>)<br>) |
| and | )<br>) |
| **JODIE BURKHARD**, in her official and individual capacities as an Inspector of the Maine Department of Health and Human Services, | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **CRYSTAL ARBOUR**, in her official and Individual capacities as Child Care Services Program Manager of the Maine Department of Health and Human Services, | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **DR. LAWRENCE RICCI**, in his official and individual capacities as a Subcontractor of the Maine Department of Health and Human Services, | )<br>)<br>)<br>)<br>) |
| And | )<br>**)** |
| **PAM SENNETT**, in her official and individual capacities as an Out-of-Home Investigator of the Maine Department of Health and Human Services, | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **LUKE CURTIS**, in his official and individual capacities as Civil Rights and ADA Coordinator of the Maine Department of Health and Human Services, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**FEDERAL COMPLAINT WITH JURY DEMAND**

NOW COMES Plaintiff Betsey J. Grant, by and through the undersigned attorney of record, and for her cause of action against the above-named Defendants, alleges and shows claims for relief as follows:

2

## I.  PRELIMINARY STATEMENT

1. This federal civil action arises from a sustained campaign of retaliation and reputational harm by officials affiliated with the Maine Department of Health and Human Services ("DHHS") Office of Child and Family Services ("OCFS") against Plaintiff Betsey J. Grant, a licensed childcare provider and the owner/operator of Tiny Tikes Daycare in Trenton, Maine. After Ms. Grant engaged in protected speech – including testifying on March 10, 2023, before Maine's Government Oversight Committee (GOC) regarding DHHS's mishandling of foster children's funding and the treatment of mandated reporters – DHHS officials and investigators embarked on a pattern of retaliatory enforcement, public defamation, and arbitrary licensing actions that threatened the continued operation of her business and deprived her of constitutional rights.

2. Within weeks of her March 10, 2023, testimony – during which DHHS leaders in attendance were overheard calling her a liar and stating "my license will be fun to sanction" – the Department imposed a conditional license; caused or contributed to withholding approximately $30,000 in foster care childcare subsidies; coordinated to remove her from the federal food program (a loss approximating $230,496); and disqualified her previously approved $74,000 childcare expansion grant. The Department also posted and maintained false and stigmatizing statements about her program on the State's public-facing "childcarechoices.me" website and extended her conditional license far beyond the twelve-month maximum permitted by rule.

3. Plaintiff brings claims under 42 U.S.C. § 1983 for First Amendment retaliation and Fourteenth Amendment due process violations against individual DHHS officials in their personal capacities and seeks damages. Plaintiff also brings supplemental Maine-law

claims for defamation and tortious interference against the same individuals. Plaintiff seeks injunctive and declaratory relief against DHHS to halt ongoing retaliation and defamatory publications, to correct the public record, and to protect her full license and participation in various programs.

## II. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this District because a substantial part of the events or omissions giving rise to these claims occurred in Maine. 28 U.S.C. § 1391.

## III. PARTIES

5. Plaintiff Betsey J. Grant is a resident of Hancock, Hancock County, Maine. She owns and operates Tiny Tikes Daycare, a licensed childcare facility in Trenton, Maine.

6. Defendant Maine Department of Health and Human Services is a state agency headquartered in Augusta, Maine, responsible for licensing and oversight of childcare facilities. Plaintiff seeks injunctive and declaratory relief against the agency.

7. Defendants sued in their individual capacities for damages are current or former DHHS/OCFS-affiliated personnel who acted under color of state law:

    a. Janet S. Whitten, LMSW-CC (Children's Licensing & Investigation Manager, OCFS);

    b. John Feeney (OCFS);

    c. Bobbi Johnson (OCFS);

    d. Cheryl Cogger (Out-of-Home Investigator, OCFS);

  e. Elizabeth "Beth" Burnham (Child Care Licensing Specialist, OCFS);

  f. Jodie Burkhard (Inspector, OCFS);

  g. Crystal Arbour (OCFS);

  h. Dr. Lawrence Ricci (DHHS subcontractor);

  i. Pam Sennett (OOHI caseworker, OCFS);

  j. Luke Curtis (DHHS Civil Rights/ADA intake).

8. Plaintiff also seeks prospective injunctive and declaratory relief against DHHS and, as necessary to effectuate such relief, against the current DHHS commissioner in his/her official capacity, identified here as Sara Gagné-Holmes.

### IV. FACTUAL ALLEGATIONS

**A. Plaintiff's protected speech and whistleblowing**

9. Plaintiff has operated Tiny Tikes Daycare for years, serving up to 91 children under a license issued by DHHS/OCFS. From 2019 to 2023, she served 57 state foster children. She repeatedly advocated for child safety and program integrity and made mandated reports of suspected child abuse and neglect.

10. On March 10, 2023, Plaintiff testified publicly before the Government Oversight Committee about (i) discrimination and mishandling of foster children's federal funding by Maine DHHS/OCFS and the Department of Education; (ii) the persistent ignoring and retaliating against mandated reporters by DHHS's Child Protection Unit; and (iii) systemic licensing irregularities.

11. During Plaintiff's GOC testimony, DHHS leadership sat in the audience; Plaintiff's staff overheard DHHS leaders call Plaintiff a liar and say, "my license will be fun to sanction."

12. Plaintiff had previously submitted an ADA/civil rights complaint on December 18, 2021. DHHS did not open it until March 1, 2023, and, per DHHS official Luke Curtis, did not substantively respond until 439 days after filing, far beyond ordinary civil rights timelines. Plaintiff alleges Curtis failed to seek all responsive communications from Defendant Janet Whitten and improperly furnished Plaintiff's evidentiary materials to licensing/investigative personnel who then used them to build false violations.

**B. Retaliatory enforcement, defamatory publications, and licensing abuse**

13. Within weeks of Plaintiff's March 10, 2023, testimony, DHHS/OCFS issued a Notice of Conditional License dated June 26, 2023, later upheld in a recommended decision dated February 7, 2024, following a November 28, 2023, hearing. Plaintiff alleges the investigation and adjudication were tainted by bias, intimidation, incomplete and inaccurate documentation, omission of exculpatory evidence, and reliance on tainted evidence, including perjury and misconduct by Investigator Cheryl Cogger and others.

14. Plaintiff alleges OCFS investigators (including Defendants Cogger and Burnham), and management (including Defendant Whitten) (a) initiated repeated and unjustified investigations, (b) publicly posted false and stigmatizing information on the State website "childcarechoices.me," and (c) changed Plaintiff's status from "compliant" to "noncompliant" prior to completing investigations, all to retaliate and chill Plaintiff's speech.

15. Plaintiff's program had zero violations in inspections in March and June 2021. Eighteen days after a June 2021 visit finding zero violations, a new investigator came for a false CPS report and issued 17 pages of alleged violations; the inspector (Jodie Burkhard) resigned within 24 hours after Plaintiff refuted the inaccuracies.

16. Plaintiff alleges DHHS selectively and inconsistently enforced licensing standards, including during the COVID-19 State of Emergency, when Governor Janet Mills permitted over-capacity operations. Despite prior approval by the licensing specialist, on July 21, 2021, Plaintiff was written up for over-capacity and forced back to pre-COVID capacity, costing significant revenue.

17. Plaintiff alleges DHHS intentionally misrepresented her compliance status and published false statements implying unsafe practices and noncompliance. These publications caused parents to withdraw their children, damaged her business reputation, and resulted in economic losses.

18. Plaintiff's counsel wrote on April 25, 2025, to OCFS leaders (Defendants Whitten, Feeney, and Johnson) documenting that the conditional license issued June 26, 2023, had persisted for nearly two years, contravening the clear cap that a "conditional license shall be issued for a specific term not to exceed twelve (12) months" per 10-148 C.M.R. Ch. 32, § 2(E)(6). Counsel also noted Plaintiff's 20 monthly inspections with perfect scores and DHHS's April 9, 2025, admission that she had "satisfied requirements for renewal," yet DHHS refused to process without Plaintiff's signature while failing to reconcile its prior accusations with unchanged practices.

19. Plaintiff asserts she did not alter the previously contested practices, which DHHS had branded violations, yet DHHS declared she had "satisfied requirements" while refusing to restore a full license absent a signature. She requested clarity and correction, including recognition of an October 14, 2022, waiver from former OCFS Director Todd A. Landry concerning certain documentation requirements related to security protocols.

20. The February 7, 2024, recommended decision recites numerous alleged rule violations, yet also acknowledges that OCFS's "conditional license shall be issued for a specific term not to exceed twelve (12) months" (10-148 C.M.R. Ch. 32, § 2(E)(6)) and that the hearing was de novo under 10-144 C.M.R. Ch. 1 and Ch. 32. Plaintiff alleges the adjudication nonetheless ignored exculpatory facts; credited biased and retaliatory evidence; and failed to remedy illegal publication of stigmatizing statements and the unlawful extension of the conditional license beyond twelve months contrary to rule and 22 M.R.S. § 7802(1)(C).

C. **Financial retaliation and interference with federal programs**

21. Following the March 10, 2023, GOC testimony, Plaintiff's foster children's subsidies (approximately $30,000) were withheld; she was removed from the federal food program (loss approximating $230,496); and her approved $74,000 expansion grant was rescinded due to the unlawful license sanction. Plaintiff alleges Defendant John Feeney colluded with the Department of Education to remove her from the food program for seven years by falsely claiming her business was not viable, and caused foster children's funds to be withheld; Defendant Crystal Arbor falsified public records and withheld federal funding owed; and Defendant Bobbi Johnson misled Plaintiff during a September 4, 2024, meeting to deter her pursuit of review and appeal.

22. Plaintiff alleges DHHS demanded that she change signature dates associated with restored funds to avoid adverse audit findings, demonstrating knowledge of prior improprieties.

### D. Silencing mandated reporters and obstructing investigations

23. Plaintiff alleges she is the only mandated reporter in Maine to receive a violation for reporting suspected child endangerment – a point underscoring a broader, unconstitutional practice of ignoring mandated reports and retaliating against reporters. Plaintiff's incident reports and testimony reflect that children were seriously injured, hospitalized, and one died in March 2022 because DHHS disregarded reports.

24. Plaintiff alleges Defendant Janet Whitten actively ignored mandated reports; retaliated after mandated reports proved true by law enforcement and hospitalization; and obstructed investigations.

25. Plaintiff further alleges investigative misconduct and obstruction by Defendants Cheryl Cogger and Pam Sennett, including falsifying records, omitting evidence, intimidation, accepting tainted evidence, and perjury in administrative proceedings.

### E. Insurance fraud and tainted "abuse" determinations

26. Plaintiff documented insurance fraud by DHHS-affiliated personnel, alleging that Defendant Pam Sennett (OOHI) and DHHS subcontractor Defendant Dr. Ricci charged Plaintiff's insurer for unnecessary x-rays 69 days after an alleged event without ever examining the child, as part of a broader patter to discredit Plaintiff after she raised concerns about DHHS misconduct.

### F. Ongoing harm

27. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of income, withdrawal of clients, loss of subsidies and federal program participation, loss of grants, loss of good will, reputational harm, emotional distress, and deprivation and ongoing threat to her property interests in her license and business operations. DHHS's

defamatory public postings and the extended conditional license caused her substantial injury and harm.

## V. LEGAL BACKGROUND (PROVIDED AUTHORITY)

28. The Department may issue a conditional license only when a licensee fails to comply with applicable law and rules and when "in the judgment of the commissioner, the best interest of the public would be so served." 22 M.R.S. § 7802(1)(C); 10-148 C.M.R. Ch. 32, § 2(E)(5).

29. A conditional license "shall be issued for a specific term not to exceed twelve (12) months" or the remaining term of the full license. 10-148 C.M.R. Ch. 32, § 2(E)(6).

30. DHHS administrative hearings are de novo under the Department's Administrative Hearing Regulations, 10-144 C.M.R. Ch. 1, with the Department bearing the burden by a preponderance. The Child Care Facility Licensing Rule is at 10-148 C.M.R. Ch. 32.

31. Plaintiff's federal civil rights claims arise under 42 U.S.C. § 1983, with fees available under 42 U.S.C. § 1988.

32. This Court possesses federal jurisdiction under 28 U.S.C. §§ 1331 and 1343, supplemental jurisdiction under 28 U.S.C. § 1367, and venue under 28 U.S.C. § 1391.

33. State sovereign immunity issues under the Maine Tort Claims Act (14 M.R.S. §§ 8101-8118) limit damages against the State and its agencies; state-law tort claims are asserted here against individual employees alleged to have acted with malice and/or outside legitimate discretionary authority.

## VI.  CAUSES OF ACTION

**Count I – First Amendment Retaliation (42 U.S.C. § 1983) – Against Individual Defendants Whitten, Feeney, Johnson, Cogger, Burnham, Burkhard, Arbor, Sennett, Dr. Ricci, and Curtis**

34. Plaintiff repeats and realleges all prior paragraphs.

35. Plaintiff engaged in protected speech and petitioning, including mandated reports of child endangerment, communicating concerns about DHHS misconduct and mishandling of funds to state officials, filing an ADA/Civil Rights complaint, submitting grievances to oversight entities, and testifying publicly on March 10, 2023, before the Government Oversight Committee.

36. Acting under color of state law, Defendants retaliated against Plaintiff because of her protected speech by, inter alia: initiating tainted and unjustified investigations; publishing and maintaining false, stigmatizing statements about Plaintiff's program on the State's public website; unlawfully extending or maintaining a conditional license beyond regulatory limits; withholding or causing to be withheld foster care subsidies; colluding to remove Plaintiff from the federal food program and to rescind a previously approved expansion grant; mischaracterizing compliance status; and threatening and impairing licensing and renewal processes.

37. Defendants' adverse actions would deter a person of ordinary firmness from continuing to engage in protected speech.

38. Defendants' retaliatory motive is evidenced by the temporal proximity to Plaintiff's March 10, 2023, testimony, the overheard statements at that hearing ("liar," "my license will be fun to sanction"), the pattern of selective enforcement and publication, and the use of investigative and adjudicative tools to punish Plaintiff's speech.

39. As a direct and proximate result, Plaintiff sustained economic losses (including subsidies, program revenues, and grant funds), reputational harm, emotional distress, and ongoing impairment to her business.

40. Plaintiff seeks compensatory damages and punitive damages against the individual Defendants, injunctive and declaratory relief against DHHS to cease retaliatory conduct and correct public records.

    To establish a First Amendment retaliation claim, a plaintiff must show she engaged in protected speech, suffered an adverse action, and that the speech was a substantial or motivating factor for the adverse action. *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

### Count II – Fourteenth Amendment Procedural and Substantive Due Process

41. Plaintiff repeats and realleges all prior paragraphs.

42. Plaintiff possesses protected property interests in her state childcare license and her established business operations, and protected liberty interests in her reputation and good name, particularly when stigmatizing statements are publicly disseminated by the State in connection with alteration of her legal status (stigma-plus).

43. Defendants deprived Plaintiff of these interests without constitutionally sufficient process by, among other things: predicating licensing actions on biased, incomplete, or falsified evidence; publishing false statements on an official State website prior to and without adequate findings; refusing to correct acknowledged inconsistencies (including claiming "satisfied requirements" while maintaining conditions); and unlawfully maintaining a conditional license beyond the twelve-month limit set by rule (10-148 C.M.R. Ch. 32, § 2(E)(6)).

44. Defendants also engaged in arbitrary, capricious, and conscience-shocking conduct by intentionally misrepresenting compliance status, manipulating licensing and funding mechanisms to punish protected speech, and weaponizing adjudicative proceedings infected by bias and retaliation.

45. As a direct and proximate result, Plaintiff suffered economic loss, reputational harm, emotional distress, and impairment to business operations.

46. Plaintiff seeks compensatory and punitive damages against the individual Defendants and injunctive and declaratory relief against DHHS to restore and protect her rights.

> Reputation alone, apart from some more tangible interests such as employment, is not sufficient to invoke the procedural protection of the Due Process Clause; there must be stigma plus a change in legal status. *Paul v. Davis*, 424 U.S. 693, 701 (1976).

**Count III – Defamation (Libel and Slander) – Maine Law – Against Individual Defendants Whitten, Feeney, Johnson, Cogger, Burnham, Burkhard, Arbor, Sennett, and Dr. Ricci**

47. Plaintiff repeats and realleges all prior paragraphs.

48. Defendants made, caused to be made, and/or knowingly permitted publication of false statements of fact about Plaintiff and her program – including statements falsely implying unsafe operations, noncompliance, and other stigmatizing accusations – on official State platforms (including "childcarechoices.me") and to third parties (parents, staff, community members, other providers, and agencies).

49. These statements were false and defamatory, published at least negligently and, upon information and belief, with malice or reckless disregard for the truth, and in retaliation for Plaintiff's protected speech.

50. As a direct and proximate result, Plaintiff suffered reputational damage, loss of clientele, lost revenue, and other special damages.

51. This claim is asserted against individual Defendants only, as the Maine Tort Claims Act provides sovereign immunity for the State and its agencies. 14 M.R.S. §§ 8101-8118.

**Count IV – Tortious Interference with Advantageous Business Relations – Maine Law – Against Individual Defendants Feeney, Arbor, Whitten, Cogger, Burnham, Burkhard, Sennett, and Dr. Ricci**

52. Plaintiff repeats and realleges all prior paragraphs.

53. Plaintiff maintained advantageous business relationships with parents of enrolled children, employees, vendors, and governmental partners administering subsidies and federal programs.

54. Defendants intentionally and improperly interfered with these relationships by publishing and maintaining false statements; unlawfully impeding subsidies and program participation; colluding to remove Plaintiff from the federal food program; rescinding an approved expansion grant by means of an unlawful license sanction; and threatening Plaintiff's licensure renewal and business operations – all in retaliation for Plaintiff's protected speech and whistleblowing.

55. Defendants' interference lacked privilege or justification and was motivated by ill will and retaliatory animus.

56. As a direct and proximate result, Plaintiff suffered loss of business relationships, revenue, opportunities, and reputational harm.

## VII.   INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff seeks equitable relief against DHHS and, as necessary, against the current DHHS Commissioner in his/her official capacity, including:

57. A declaration that Defendants' actions violated Plaintiff's rights under the First and Fourteenth Amendments, enforceable via 42 U.S.C. § 1983, and that DHHS's

maintenance of a conditional license beyond twelve months contravenes 10-148 C.M.R. Ch. 32, § 2(E)(6) and is void.

58. An injunction requiring DHHS to:

   a. Immediately cease publishing, maintaining, or disseminating false or stigmatizing statements about Plaintiff and Tiny Tikes Daycare on the State's websites or communications and to correct and remove defamatory postings, including on "childcarechoices.me;"

   b. Correct Plaintiff's public licensing record to accurately reflect her compliance status, expunge false violations, and acknowledge the October 14, 2022, waiver from former OCFS Director Todd A. Landry related to documentation requirements;

   c. Maintain the recently modified Plaintiff's license to full, unrestricted status and prohibit future retaliation;

   d. Comply with the twelve-month maximum for conditional licenses (10-148 C.M.R. Ch. 32, § 2(E)(6)) and the requirements of 22 M.R.S. § 7802(1)(C);

   e. Take all steps within DHHS control to remove retaliatory impediments to Plaintiff's participation in foster care subsidies and other programs and to coordinate in good faith with relevant agencies to remedy the harm to Plaintiff's participation in the federal food program and previously approved expansion grant.

59. Preliminary injunctive relief to preserve the status quo and prevent irreparable harm during the pendency of this action.

The Declaratory Judgment Act provides that any court of the United States may declare the rights and other legal relations of any interested party. 28 U.S.C. § 2201.

## VIII. DAMAGES

Plaintiff seeks compensatory damages against individual Defendants for economic losses (including withheld subsidies, lost food program reimbursements, and loss of the $74,000 grant), lost business and good will, reputational harm, and emotional distress; punitive damages for willful and malicious conduct; costs; and reasonable attorneys' fees under 42 U.S.C. § 1988.

## IX. PRESERVATION OF EVIDENCE

Plaintiff requests that Defendants preserve all documents, communications, data, social media, website postings, and electronically stored information related to Plaintiff, Tiny Tikes Daycare, licensing actions, website publications, administrative investigations and hearings, funding or subsidy decisions, and communications among named Defendants and with third parties regarding Plaintiff.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

A. Award compensatory damages in an amount to be determined at trial against the individual Defendants;

B. Award punitive damages against the individual Defendants for willful, malicious, and retaliatory conduct;

C. Enter declaratory relief as stated in Section VII;

D. Enter preliminary and permanent injunctive relief ordering DHHS to cease retaliatory conduct; remove and correct defamatory and inaccurate website publications; protect

    Plaintiff's full license; comply with 10-148 C.M.R. Ch. 32, § 2(E)(6) and 22 M.R.S. § 7802(1)(C); and take steps within DHHS's control to remedy interference with subsidies, federal program participation, and the expansion grant;

E. Award Plaintiff her costs, prejudgment interest, and reasonable attorneys' fees under 42 U.S.C. § 1988;

F. Grant such other and further relief as the Court deems just and proper.

## XI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: September 24, 2025

*/s/ Walter H. Foster IV*
Walter H. Foster IV, Esq., Bar No. 11047
Attorney for Plaintiff
STEVE SMITH Trial Lawyers
191 Water Street
Augusta, ME 04330
T (207) 622-3711
F (207) 707-1036
Walter@MaineTrialLaw.com