UNITED STATES DISTRICT COURT'
DISTRICT OF MAINE

| | | |
|---|---|---|
| BETSEY J. GRANT | ) | |
| | ) | |
| v, | ) | No. 1:25-cv-00490-JAW |
| | ) | |
| MAINE STATE DEPARTMENT OF | ) | |
| HEATH AND HUMAN SERVICES, et | ) | |
| al, | ) | |

**ORDER ON DR. LAWRENCE RICCI'S MOTION TO DISMISS**

After winnowing the conclusory allegations in the complaint and adjectival advocacy in a memorandum from the factual allegations in a complaint, the court concludes that the allegations in a complaint against a physician who subcontracted with a state agency are too meager to sustain the plaintiff's charge that the physician retaliated against a daycare owner for her testimony before a legislative committee by billing the daycare center's medical insurer for a diagnostic test for one of the daycare center's children.

## I.    BACKGROUND

### A.    Procedural Background

On September 24, 2025, Betsey J. Grant, a licensed childcare provider, filed a lawsuit against the Maine State Department of Health and Human Services (DHHS) and ten individuals in their individual and official capacities (collectively Defendants), alleging under various theories that the Defendants violated her constitutional and statutory rights. *Compl.* (ECF No. 1).  Ms. Grant states that on March 10, 2023, she engaged in protected speech when she testified before the Government Oversight Committee of the DHHS, but after her testimony, DHHS and

other defendants retaliated against her for her testimony critical of DHHS. *Compl. ¶¶ 1-2.* Ms. Grant's complaint seeks damages and injunctive relief and contains four counts: (1) Count One: First Amendment retaliation under 42 U.S.C. § 1983, (2) Count Two: Fourteenth Amendment Procedural and Substantive Due Process, (3) Count Three: Defamation—Libel and Slander—under Maine law, and (4) Count Four: Tortious Interference with Advantageous Business Relations under Maine law. *Id.*

On December 4, 2025, Dr. Lawrence Ricci filed a motion to dismiss the complaint for failure to state a claim against him upon which relief can be granted. *Def. Dr. Lawrence Ricci's Mot. to Dismiss* (ECF No. 17) (*Dr. Ricci's Mot.*). On January 7, 2026, Ms. Clark responded to Dr. Ricci's motion. *Pl.'s Opp'n to Def. Dr. Lawrence Ricci's Mot. to Dismiss* (ECF No. 22) (*Pl.'s Opp'n*). On January 20, 2026, Dr. Ricci filed his reply. *Def. Dr. Lawrence Ricci's Reply in Support of Mot. to Dismiss* (ECF No. 23) (*Dr. Ricci's Reply*).

### B. Factual Background[1]

#### 1. General Allegations

In her complaint, Ms. Grant, a licensed child care provider and the owner/operator of Tiny Tots Daycare in Trenton, Maine, alleges that because she engaged in protected speech, publicly criticizing DHHS's alleged mishandling of foster children's funding and the treatment of mandated reporters, Maine DHHS

---

[1] Consistent with the motion to dismiss standard, the Court relied on the complaint's well-pleaded facts. "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Here, in its recitation of the facts, the Court has focused on Ms. Grant's allegations against Dr. Ricci as opposed to other Defendants.

employees and investigators engaged in a campaign of retaliatory enforcement, public defamation, and arbitrary licensing actions that threatened the continued operation of her business and deprived her of constitutional rights. *Compl.* ¶ 1. Ms. Grant states that on March 10, 2023, she testified about these matters before Maine's Governmental Oversight Committee. *Id.* At the time of her testimony, she alleges that "leaders of DHHS were overheard calling her a liar and stating that "my license will be fun to sanction." *Id.* ¶ 2. Within weeks of her March 10, 2023 testimony, Ms. Grant states that DHHS "imposed a conditional license; caused or contributed to withholding approximately $30,000 in foster care subsidies; coordinated to remove her from the federal food program (a loss of approximately $230,496); [] disqualified her previously approved $74,000 childcare expansion grant; . . . posted and maintained false and stigmatizing statements about her program on the State's public facing 'childcarechoices.me' website, and extended her conditional license far beyond the twelve-month maximum permitted by rule." *Id.*

### 2. Allegation Against Dr. Ricci[2]

Ms. Grant alleges that Dr. Ricci acted under color of state law as a DHHS subcontractor. *Id.* ¶ 7. The sole reference to Dr. Ricci's involvement in this general campaign against Ms. Grant is found in paragraph 26:

> Plaintiff documented insurance fraud by DHHS-affiliated personnel, alleging that Defendant Pam Sennett (OOHI) and DHHS subcontractor

---

[2]    In Dr. Ricci's motion, he asserts that he retired from the practice of medicine in 2020 and became a physician emeritus, arguing that he could not have ordered an x-ray in 2023, given his status. *Def.'s Mot.* at 1. Ms. Grant objects to the Court's consideration of Dr. Ricci's claimed retirement. *Pl.'s Opp'n* at 7-8. The Court agrees with Ms. Grant that it may not consider Dr. Ricci's factual assertions about his retirement in ruling on his motion to dismiss.

> Defendant Dr. Ricci charged Plaintiff's insurer for unnecessary x-rays 69 days after an alleged event without ever examining the child, as a part of a broader pattern to discredit Plaintiff after she raised concerns about DHHS conduct.

*Id.* ¶ 26.

## II.   THE POSITIONS OF THE PARTIES

### A.   Dr. Ricci's Motion

Regarding the § 1983 count, Dr. Ricci first asserts that there is no factual basis for Ms. Grant's allegation that he was acting under color of state law, pointing out authority that by contracting with the government, a contractor does not, by that fact alone, operate under color of state law. *Dr. Ricci's Mot.* at 4-6. Next, Dr. Ricci says that there is no allegation that he subjected Ms. Grant to an adverse action by billing her insurer for allegedly unnecessary x-rays. *Id.* at 6-7. Furthermore, Dr. Ricci maintains there is no allegation that his action in charging her insurer for unnecessary x-rays was motivated by anything that Ms. Grant said. *Id.* at 7-8.

Turning to the Fourteenth Amendment claim, Dr. Ricci argues that there is no allegation in the complaint that states that he had anything to do with the alleged violations of procedural and substantive due process alleged in the complaint. *Id.* at 8-10. Specifically, Dr. Ricci points to the seven actions Ms. Grant alleges constituted a violation of procedural due process, and Dr. Ricci maintains that he could not possibly have caused any of those things to happen. *Id.* at 9. As for substantive due process, Dr. Ricci argues that Ms. Grant has not alleged sufficient facts to meet the "shocks the conscience of the court" standard. *Id.* at 10.

As for the defamation claim, Dr. Ricci contends that there is no allegation that he made a written or verbal defamatory statement about Ms. Grant. *Id.* at 10-12.

Finally, regarding the tortious interference claim, Dr. Ricci asserts that there is no allegation in the complaint that his charging her insurer for unnecessary x-rays interfered with any advantageous economic relationship that Ms. Grant possessed. *Id.* at 12-13.

## B.    Betsey Grant's Response

In her response, Ms. Grant argues that Dr. Ricci was not a "peripheral or accidental actor" in the campaign launched by DHHS against her. *Pl.'s Opp'n* at 1. She alleges that Dr. Ricci's conduct was "leveraged to manufacture false medical evidence intended to discredit Plaintiff and support adverse licensing and enforcement actions against her daycare business." *Id.* Ms. Grant charges that Pam Sennet, the Out-of-Home Investigator for DHHS, "coordinated with Defendant Ricci" to "generate medical charges purporting to substantiate allegations against Plaintiff." *Id.* at 2. Ms. Grant says that "Defendant Ricci billed Plaintiff's insurer for x-rays that were unnecessary, untimely, and performed without any examination of the child, approximately sixty-nine days after the alleged incident." *Id.* Ms. Grant claims that "[t]hese charges were not the result of independent medical judgment; rather, they were used to retroactively construct an appearance of medical corroboration where none existed." *Id.*

Ms. Grant disputes Dr. Ricci's contention that she has failed to allege state action, arguing that the complaint alleges that he was a "willful participant in joint

5

activity with the State or its agents." *Id.* at 3 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)).

Turning to the First Amendment, Ms. Grant acknowledges that to state a constitutional claim, she must "plausibly allege that she engaged in constitutionally protected conduct, that the defendant subjected her to adverse action, and that the protected conduct was a substantial or motivating factor for the adverse action." *Id.* at 4 (citing *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)). She claims the complaint satisfies all three elements. *Id.* at 4-5.

Regarding procedural and substantive due process, Ms. Grant says she has a constitutionally protected interest in her business and her reputation combined with an alteration of her legal status, commonly referred to as a stigma-plus deprivation. *Id.* at 5. She maintains that the complaint "plausibly alleges that Defendant Ricci's conduct contributed to the creation of false abuse narratives, supported and reinforced DHHS enforcement and licensing actions, and formed part of the evidentiary basis for sanctions and public stigmatization imposed on the Plaintiff." *Id.* at 6.

Turning to defamation, Ms. Grant disputes Dr. Ricci's contention that her complaint is defective for failing to quote any defamatory statements. *Id.* She argues that the complaint alleges "defamation by conduct, specifically the knowing creation and transmission of false medical evidence implying abuse or neglect, which was then used and relied upon by DHHS and other third parties to stigmatize Plaintiff and justify adverse action." *Id.*

6

Finally, as regards tortious interference, Ms. Grant says that the complaint sets forth her relationships with "parents of enrolled children, insurers, and governmental program administrators responsible for funding and oversight, and that these relationships were foreseeably harmed by Defendant Ricci's conduct." *Id.* at 7. Ms. Grant goes on to state that "[t]he Complaint further pleads fraud with sufficient particularity to satisfy Rule 9(b), identifying who committed the fraud (Defendant Ricci), what conduct constituted the fraud (billing for unnecessary x-rays), when it occurred (approximately sixty-nine days after the alleged incident), how it was carried out (without examining the child), and why it was undertaken (to manufacture evidence and discredit Plaintiff in coordination with DHHS enforcement efforts)." *Id.*

### C.    Dr. Ricci's Reply

In his reply, Dr. Ricci first argues that Ms. Grant cited the incorrect legal standard for this Court's evaluation of a motion to dismiss. *Dr. Ricci's Reply* at 1-2. Dr. Ricci then points out that Ms. Grant's memorandum contained numerous factual assertions not found in her complaint, and Dr. Ricci urged the Court to ignore those assertions. *Id.* at 2-3. Dr. Ricci also contends that Ms. Grant's references to facts in her complaint were in critical areas simply conclusory statements, not factual allegations, and as such should not be credited. *Id.* at 3-4. Dr. Ricci observes that Ms. Grant did not respond to his procedural and substantive due process arguments. *Id.* at 5-6. Dr. Ricci argues that Ms. Grant's defamation claim "makes little sense" because it relies on conduct, not speech or writing, and fails to describe in the

complaint, as opposed to Ms. Grant's memorandum, what the defamatory statements were. *Id.* at 6. Finally, Dr. Ricci argues that the complaint fails to adequately allege what the fraud and intimidation applies to his conduct as Maine law requires for a tortious interference claim. *Id.* at 6-7.

## III.   LEGAL STANDARD

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)). Plausible means "something more than merely possible" or "merely consistent with a defendant's liability." *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (quotation marks and citations omitted) (first quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), and then quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). Although this does not require "detailed factual allegations," the facts pleaded must at least "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, a facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, dismissal is appropriate if a complaint's well-pleaded facts do not "possess enough heft to 'sho[w] that [the plaintiff] is entitled to relief.'" *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (first alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Assessing a complaint's plausibility is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In the First Circuit, district courts apply a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the [complaint's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P. R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

"Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*) (citing *Twombly*, 550 U.S. at 555).

## IV. DISCUSSION

From the Court's perspective, Ms. Grant's complaint against Dr. Ricci is fatally flawed because there is a gap between what Dr. Ricci is alleged to have done and any of her causes of action. Ms. Grant says that Dr. Ricci "charged Plaintiff's insurer for unnecessary x-rays 69 days after an alleged event without ever examining the child."

9

*Compl.* ¶ 26.  To make sense of this allegation against Dr. Ricci, the Court assumes that there must have been an allegation from someone not named that a child under Ms. Grant's care sustained some kind of abuse.  None of this, however, is specifically alleged in the complaint.  Then, sixty-nine days after the incident, the date of which is never alleged, Dr. Ricci ordered x-rays of the child and charged Ms. Grant's insurer.  There is, however, no mention in the complaint about the x-ray results and whether they did or did not corroborate the alleged abuse.  Instead, the complaint alleges that Dr. Ricci's act in billing Ms. Grant's healthcare insurer was the act that constituted his unconstitutional and tortious wrong against Ms. Grant.

The Court is nonplussed.  Assuming there is an allegation that a child suffered abuse at a daycare center, the Court does not know why, when alerted to the allegation, it would be improper for a physician to order an x-ray to determine whether the child's injuries were radiologically confirmed.  For example, if the allegation was that an abuser had broken a child's arm, an x-ray could presumably establish whether the arm had been broken or, alternatively, it could establish that the arm had not been broken, possibly exonerating Ms. Grant.  After all, an x-ray is an objective diagnostic tool: it reveals what it reveals, and there is no allegation that Dr. Ricci controlled or manipulated the x-ray results.  But the complaint is silent about why the physician's routine act of ordering an x-ray is part of a greater conspiracy to retaliate against Ms. Grant.

The complaint implies, but does not directly allege, that Dr. Ricci did something wrong in ordering an x-ray without examining the child and that there is

10

something significant about a delay of sixty-nine days from the date of the incident. But it is unclear why a doctor must examine the child to order this diagnostic tool. Again, the x-ray will reveal what it reveals and could either corroborate or disprove the alleged abuse based on its results, regardless of what a physical examination would have revealed. There is no outright allegation that the absence of examination or a sixty-nine-day delay affected the results of the x-ray. In short, the complaint is silent about why the physician's routine act of ordering an x-ray is part of a greater conspiracy.

In fact, as the Court reads the slim allegations against Dr. Ricci, it is not the act of ordering an x-ray that troubles Ms. Grant but his billing the charge for the x-ray against her business's medical insurer: "Defendant Dr. Ricci charged Plaintiff's insurer for unnecessary x-rays." *Compl.* ¶ 26 (emphasis supplied). Again, the complaint never explains why Dr. Ricci's act in billing Ms. Grant's medical insurer would make him complicit in a retaliatory conspiracy against her. Presumably, if a child were injured while in a daycare provider's care, a medical provider could properly bill the daycare center's medical insurer for a diagnostic test. In these circumstances, the Court sees nothing sinister or conspiratorial about the act of billing Ms. Grant's insurer. If the charge was not covered, the medical insurer could have rejected the submission, but there is no allegation that it did so.

Furthermore, the submission of a bill to Ms. Grant's medical insurer is a step away from Ms. Grant herself. By allegation, Dr. Ricci did not submit the bill to Ms. Grant, so it is unclear why his act of submitting the bill to her insurer implicated her

11

in whatever abuse investigation was ongoing. In fact, there is no allegation that the medical insurer either paid or did not pay Dr. Ricci's bill, or that it matters.

The complaint alleges that Dr. Ricci was a subcontractor to DHHS, but it does not allege that he was aware of Ms. Grant's testimony before the legislative committee or had any reason to retaliate against her. The complaint does not claim, for example, that Ms. Grant's testimony implicated Dr. Ricci in any wrongdoing or provide any basis to make a finding that Dr. Ricci was motivated to retaliate against Ms. Grant.

As Dr. Ricci points out, there is a variance between the allegations in the complaint and the assertions in Ms. Grant's memorandum. In her opposition, Ms. Grant alleges that "Defendant Ricci was not a peripheral or accidental actor in that campaign. Rather, as alleged in the Complaint, Defendant Ricci functioned as a DHHS-affiliated subcontractor whose conduct was leveraged to manufacture false medical evidence intended to discredit Plaintiff and support adverse licensing and enforcement actions against her daycare business." *Pl.'s Opp'n* at 1. Ms. Grant's attorney further claims that "Defendant Ricci's actions were not isolated, accidental, or benign; they were intertwined with DHHS's investigative activity and served the shared objectives of discrediting Plaintiff and justifying punitive regulatory action." *Id.* at 2.

But, in evaluating a motion to dismiss, a court is required to examine the complaint itself and accept its allegations as true. *Ashcroft*, 556 U.S. 678. In making this evaluation, a court may not include factual statements in a lawyer's

12

memorandum that are not contained in the complaint itself. *See Callaghan v. Harvest Bd. Int'l*, 138 F. Supp. 2d 147, 153 (D. Mass. 2001) (refusing to accept lawyer's jurisdictional statements in evaluating a motion to dismiss under Rule 12(b)(2)). Here, the Court has disregarded Ms. Grant's attorney's adjectival advocacy because the attorney's allegations are not supported by facts alleged in the complaint.

Turning to the first step of the motion to dismiss analysis, the Court concludes that the meager factual allegations against Dr. Ricci do not withstand analysis. In drawing this conclusion, the Court has eliminated the complaint's conclusory allegations and, as just noted, the lawyer's accusations to the extent they are not supported by factual allegations. What is left is insufficient to sustain Ms. Grant's claims against Dr. Ricci. Turning to the second prong of the motion to dismiss analysis, the factual allegations against Dr. Ricci "in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," and, therefore, "the complaint is open to dismissal." *S.E.C.*, 597 F.3d at 442.

## V.   CONCLUSION

The Court GRANTS Defendant Dr. Lawrence Ricci's Motion to Dismiss (ECF No. 17).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 31st day of July, 2026

13