UNITED STATES DISTRICT COURT'
DISTRICT OF MAINE

BETSEY J. GRANT,                          )
            Plaintiff,               )
                                           )
     v,                                   )        No. 1:25-cv-00490-JAW
                                           )
MAINE STATE DEPARTMENT OF                 )
HEATH AND HUMAN SERVICES, et              )
al,                                       )

## ORDER ON STATE DEFENDANTS' MOTION TO DISMISS

A licensed daycare operator sues the Maine State Department of Health and Human Services and several of its employees in their official and individual capacities, alleging retaliation for her exercise of First Amendment rights, violations of procedural and substantive due process, and violations of the state torts of defamation and intentional interference with an advantageous business relationship. The court grants the Department's motion to dismiss, the employees' motion to dismiss in their official capacities, denies the employees' motion to dismiss the First Amendment retaliation claim in their individual capacities, grants the motion to dismiss the due process claims, and grants the motion to dismiss the state law torts.

## I.    BACKGROUND

### A.    Procedural Background

On September 24, 2025, Betsey J. Grant, a licensed childcare provider, filed a lawsuit against the Maine State Department of Health and Human Services (DHHS) and ten individuals in their individual and official capacities (collectively State Defendants), alleging under various theories that the State Defendants violated her

constitutional and statutory rights. *Compl.* (ECF No. 1). Ms. Grant states that on March 10, 2023, she engaged in protected speech when she testified before the Government Oversight Committee of the DHHS, but after her testimony, DHHS and its employees retaliated against her for her testimony critical of DHHS. *Compl.* ¶¶ 1-2. Ms. Grant's complaint seeks damages and injunctive relief and contains four counts: (1) Count One: First Amendment retaliation under 42 U.S.C. § 1983, (2) Count Two: Fourteenth Amendment Procedural and Substantive Due Process, (3) Count Three: Defamation—Libel and Slander—under Maine law, and (4) Count Four: Tortious Interference with Advantageous Business Relations under Maine law. *Id.*

On December 22, 2025, the State Defendants filed a motion to dismiss the complaint for failure to state a claim against him upon which relief can be granted and for lack of subject matter jurisdiction. *State Defs.' Mot. to Dismiss* (ECF No. 18) (*State Defs.' Mot.*). On January 7, 2026, Ms. Clark responded to the State Defendants' motion. *Pl.'s Opp'n to Def. Me. Dep't of Health and Human Servs.' Mot. to Dismiss* (ECF No. 21) (*Pl.'s Opp'n*). On January 20, 2026, the State Defendants filed their reply. *State Defs.' Reply Mem. in Support of their Mot. to Dismiss* (ECF No. 26) (*State Defs.' Reply*).

## B.    The Allegations in the Complaint

### 1.    General Allegations

In her complaint, Ms. Grant, a licensed child care provider and the owner/operator of Tiny Tikes Daycare in Trenton, Maine, alleges that because she engaged in protected speech, publicly criticizing DHHS's alleged mishandling of foster children's funding and the treatment of mandated reporters, Maine DHHS

2

employees and investigators engaged in a campaign of retaliatory enforcement, public defamation, and arbitrary licensing actions that threatened the continued operation of her business and deprived her of constitutional rights. *Compl.* ¶ 1. Ms. Grant states that on March 10, 2023, she testified about these matters before Maine's Governmental Oversight Committee. *Id.* At the time of her testimony, she alleges that leaders of DHHS were overheard calling her a liar and stating that "[her] license will be fun to sanction." *Id.* ¶ 2. Within weeks of her March 10, 2023 testimony, Ms. Grant states that DHHS "imposed a conditional license; caused or contributed to withholding approximately $30,000 in foster care subsidies; coordinated to remove her from the federal food program (a loss of approximately $230,496); [] disqualified her previously approved $74,000 childcare expansion grant; . . . posted and maintained false and stigmatizing statements about her program on the State's public facing 'childcarechoices.me' website[,] and extended her conditional license far beyond the twelve-month maximum permitted by rule." *Id.*

More specifically, Ms. Grant alleges that she operated Tiny Tikes Daycare for years, serving up to 91 children under a license issued by DHHS/OCFS. From 2019 to 2023, she served 57 state foster children, and she repeatedly advocated for child safety and program integrity and made mandated reports of suspected child abuse and neglect. *Id.* ¶ 9. Ms. Grant stated that "[o]n March 10, 2023, Plaintiff testified publicly before the Government Oversight Committee about (i) discrimination and mishandling of foster children's federal funding by Maine DHHS/OCFS and the Department of Education; (ii) the persistent ignoring and retaliating against

mandated reporters by DHHS's Child Protection Unit; and (iii) systemic licensing irregularities." *Id.* ¶ 10. Ms. Grant claims that during her legislative testimony, "DHHS leadership sat in the audience; Plaintiff's staff overheard DHHS leaders call Plaintiff a liar and say, 'my license will be fun to sanction.'" *Id.* ¶ 11.

Ms. Grant claims that she made an Americans with Disabilities Act (ADA)/Civil Rights Complaint on December 18, 2021, but DHHS did not open it until March 1, 2023. *Id.* ¶ 12. Ms. Grant further alleges that per DHHS official Luke Curtis, did not substantively respond until 439 days after filing, far beyond ordinary civil rights timelines, and that Mr. Curtis failed to seek all responsive communications from Defendant Janet Whitten and improperly furnished Ms. Grant's evidentiary materials to licensing/investigative personnel who then used them to build false violations. *Id.*

### 2.   Conditional License

Ms. Grant alleges that within weeks of Plaintiff's March 10, 2023, testimony, DHHS/OCFS issued a Notice of Conditional License dated June 26, 2023, later upheld in a recommended decision dated February 7, 2024, following a November 28, 2023, hearing. *Id.* ¶ 13. Plaintiff alleges the investigation and adjudication were tainted by bias, intimidation, incomplete and inaccurate documentation, omission of exculpatory evidence, and reliance on tainted evidence, including perjury and misconduct by Investigator Cheryl Cogger and others. *Id.*

Ms. Grant further alleges that OCFS investigators (including Defendants Cogger and Burnham), and management (including Defendant Whitten) (a) initiated

repeated and unjustified investigations, (b) publicly posted false and stigmatizing information on the State website "childcarechoices.me," and (c) changed [her] status from "compliant" to "noncompliant" prior to completing investigations, all to retaliate and chill [her] speech. *Id.* ¶ 14.

Ms. Grant further claims that her counsel wrote on April 25, 2025, to OCFS leaders (Defendants Whitten, Feeney, and Johnson) documenting that the conditional license issued June 26, 2023, had persisted for nearly two years, contravening the clear cap that a "conditional license shall be issued for a specific term not to exceed twelve (12) months" per 10-148 C.M.R. Ch. 32, § 2(E)(6). *Id.* ¶ 18. She says her Counsel also noted Plaintiff's 20 monthly inspections with perfect scores and DHHS's April 9, 2025, admission that she had "satisfied requirements for renewal," yet DHHS refused to process without Plaintiff's signature while failing to reconcile its prior accusations with unchanged practices. *Id.*

Ms. Grant alleges that the February 7, 2024, recommended decision recites numerous alleged rule violations, yet also acknowledges that OCFS's "conditional license shall be issued for a specific term not to exceed twelve (12) months" (10-148 C.M.R. Ch. 32, § 2(E)(6)) and that the hearing was de novo under 10-144 C.M.R. Ch. 1 and Ch. 32. *Id.* ¶ 20. Ms. Grant alleges that the adjudication nonetheless ignored exculpatory facts; credited biased and retaliatory evidence; and failed to remedy illegal publication of stigmatizing statements and the unlawful extension of the conditional license beyond twelve months contrary to rule and 22 M.R.S. § 7802(1)(C). *Id.*

### 3.     Financial Retaliation

Following the March 10, 2023, GOC testimony, Ms. Grant alleges that foster children's subsidies (approximately $30,000) were withheld; she was removed from the federal food program (loss approximating $230,496); and her approved $74,000 expansion grant was rescinded due to the unlawful license sanction. *Id.* ¶ 21. Ms. Grant specifically alleges that "Defendant John Feeney colluded with the Department of Education to remove her from the food program for seven years by falsely claiming her business was not viable, and caused foster children's funds to be withheld; Defendant Crystal Arbour falsified public records and withheld federal funding owed; and Defendant Bobbi Johnson misled [Ms. Grant] during a September 4, 2024, meeting to deter her pursuit of review and appeal." *Id.*

### 4.     Sanctioning Mandatory Report of Abuse

Ms. Grant alleges she is the only mandated reporter in Maine to receive a violation for reporting suspected child endangerment—a point underscoring a broader, unconstitutional practice of ignoring mandated reports and retaliating against reporters. *Id.* ¶ 23. Ms. Grant says that incident reports and testimony reflect that children were seriously injured, hospitalized, and one died in March 2022 because DHHS disregarded reports. *Id.* Specifically, Ms. Grant "alleges Defendant Janet Whitten actively ignored mandated reports; retaliated after mandated reports proved true by law enforcement and hospitalization; and obstructed investigations." *Id.* ¶ 24. Ms. Grant further alleges investigative misconduct and obstruction by Defendants Cheryl Cogger and Pam Sennett, including falsifying records, omitting

evidence, intimidation, accepting tainted evidence, and perjury in administrative proceedings. *Id.* ¶ 25.

### 5. Allegations Against DHHS

DHHS is a state agency headquartered in Augusta, Maine, responsible for licensing and oversight of childcare facilities. *Id.* ¶ 6. Ms. Grant seeks declaratory and injunctive relief against DHHS. *Id.* ¶ 46. Only one count of her four-count complaint is directed against DHHS, the Fourteenth Amendment claim for violation of procedural and substantive due process. *Id.* ¶¶ 42-46.

After alleging that she had property interests in her daycare business, Ms. Grant states that Defendants deprived her of these interests without constitutionally sufficient process by, among other things: predicating licensing actions on biased, incomplete, or falsified evidence; publishing false statements on an official State website prior to and without adequate findings; refusing to correct acknowledged inconsistencies (including claiming "satisfied requirements" while maintaining conditions); and unlawfully maintaining a conditional license beyond the twelve-month limit set by rule. *Id.* ¶ 43. (citing 10-148 C.M.R. Ch. 32, § 2(E)(6)). Ms. Grant claims that Defendants also engaged in arbitrary, capricious, and conscience-shocking conduct by intentionally misrepresenting compliance status, manipulating licensing and funding mechanisms to punish protected speech, and weaponizing adjudicative proceedings infected by bias and retaliation. *Id.* ¶ 44.

### 6. Allegations Against Jane S. Whitten

Jane S. Whitten is the Children's Licensing & Investigation Manager of DHHS of the Office of Child and Family Services (OCFS). *Id.* ¶ 7(a). Ms. Grant alleges that "OCFS investigators (including Defendants [Cheryl] Cogger and [Elizabeth] Burnham), and management (including Defendant [Jane] Whitten) (a) initiated repeated and unjustified investigations, (b) publicly posted false and stigmatizing information on the State website 'childcarechoices.me,' and (c) changed [Ms. Grant's] status from 'compliant' to 'noncompliant' prior to completing investigations, all to retaliate and chill [Ms. Grant's] speech." *Id.* ¶ 14. Ms. Grant alleges, as described above, that on April 25, 2025, her attorney wrote to OCFS leaders, including Ms. Whitten, noting that her conditional license had persisted for over two years in violation of DHHS rules and that she had satisfied the requirements for renewal, but her license had not been renewed without her signature. *Id.* ¶ 18.

Regarding mandated reports, Ms. Grant alleges that Jane Whitten actively ignored mandated reports; retaliated after mandated reports proved true by law enforcement and hospitalization; and obstructed investigations. *Id.* ¶ 24. Ms. Grant includes Ms. Whitten as a Defendant in all four counts. *Id.* ¶¶ 34-56.

### 7.    Allegations Against John Feeney

John Feeney is the Chief Operating Officer of DHHS. *Id.* ¶ 7(b). Ms. Grant alleges that Mr. Feeney was one of the recipients of her attorney's April 25, 2025 letter described above. *Id.* ¶ 18. Ms. Grant alleges Defendant John Feeney colluded with the Department of Education to remove her from the food program for seven years by falsely claiming her business was not viable, and he caused foster children's

funds to be withheld.  *Id.* ¶ 21.  Ms. Grant includes Mr. Feeney as a Defendant in all four counts.  *Id.* ¶¶ 34-56.

### 8.    Allegations Against Bobbi Johnson

Bobbi Johnson is the Director of DHHS.  *Id.* ¶ 7(c).  Ms. Grant alleges that Ms. Johnson was one of the recipients of her attorney's April 25, 2025 letter described above.  *Id.* ¶ 18.  Ms. Grant alleges that Defendant Bobbi Johnson misled her during a September 4, 2024, meeting to deter her pursuit of review and appeal.  *Id.* ¶ 21. Ms. Grant includes Ms. Johnson as a Defendant in all four counts.  *Id.* ¶¶ 34-56.

### 9.    Allegations Against Cheryl Cogger

Cheryl Cogger is an Out-of-Home Investigator for DHHS.[1]  *Id.* ¶ 7(d).  Ms. Grant alleges that Ms. Cogger committed "perjury and misconduct" during DHHS's investigation following her March 10, 2023 testimony.  *Id.* ¶ 13.  As noted above, Ms. Grant alleges that Ms. Cogger was one of the DHHS investigators who (a) initiated repeated and unjustified investigations, (b) publicly posted false and stigmatizing information on the State website "childcarechoices.me," and (c) changed Ms. Grant's status from "compliant" to "noncompliant" prior to completing investigations, all to retaliate and chill Ms. Grant's speech. *Id.* ¶ 14.

Regarding the mandatory reporting allegation, Ms. Grant alleges investigative misconduct and obstruction by Defendants Cheryl Cogger and Pam Sennett, including falsifying records, omitting evidence, intimidation, accepting tainted

---

[1]    The State Defendants say that Ms. Cogger is no longer employed at DHHS.  *Defs.' Mot.* at 7 n.1.  Ms. Grant did not respond to the State Defendants' assertion, *Pl.'s Opp'n* at 1-8, so the Court must accept the allegations of the Plaintiff's complaint against the factual assertions of the State Defendants.

evidence, and perjury in administrative proceedings. *Id.* ¶ 25. Ms. Grant includes Ms. Cogger as a Defendant in all four counts. *Id.* ¶¶ 34-56.

### 10. Allegations Against Elizabeth Burnham

Elizabeth Burnham is a Child Care Licensing Specialist at DHHS. *Id.* ¶ 7(e). As noted above, Ms. Grant alleges that Ms. Burham was one of the DHHS investigators who (a) initiated repeated and unjustified investigations, (b) publicly posted false and stigmatizing information on the State website "childcarechoices.me," and (c) changed Ms. Grant's status from "compliant" to "noncompliant" prior to completing investigations, all to retaliate and chill Ms. Grant's speech." *Id.* ¶ 14. Ms. Grant includes Ms. Burnham as a Defendant in all four counts. *Id.* ¶¶ 34-56.

### 11. Allegations Against Jodie Burckhard[2]

Jodie Burckhard is an Inspector with DHHS. *Id.* ¶ 7(f). Ms. Grant alleges that her program had zero violations in inspections in March and June 2021. *Id.* ¶ 15. However, eighteen days after a June 2021 visit finding zero violations, a new investigator came for a false CPS report and issued 17 pages of alleged violations; the inspector (Jodie Burckhard) resigned within 24 hours after Plaintiff refuted the inaccuracies. *Id.* ¶ 15. Ms. Grant includes Ms. Burckhard as a Defendant in all four counts. *Id.* ¶¶ 34-56.

---

[2]    Ms. Grant spells Ms. Burckhard's last name as Burkhard. *Compl.* ¶ 7(f). The State Defendants spell Ms. Burckhard's last name with a "c" before the "k". *State Defs.' Mot.* at 1. The Court has accepted the State Defendants' spelling on the assumption that Ms. Burckhard knows how to spell her own last name.

The State Defendants say that Ms. Burckhard is no longer employed at DHHS. *Defs.' Mot.* at 7 n.1. The complaint alleges that Ms. Burckhard resigned from DHHS, *Compl.* ¶ 15, so the Court accepts the State Defendants' assertion that Ms. Burckhard is no longer employed by DHHS.

### 12.    Allegations Against Pam Sennett[3]

Pam Sennett is an Out-of-Home Investigator for DHHS.  *Id.* ¶ 7(i).  As noted earlier, Ms. Grant alleges investigative misconduct and obstruction by Defendants Cheryl Cogger and Pam Sennett, including falsifying records, omitting evidence, intimidation, accepting tainted evidence, and perjury in administrative proceedings.  *Id.* ¶ 25.

Mr. also Grant alleges that she documented insurance fraud by DHHS-affiliated personnel, alleging that Defendant Pam Sennett and DHHS subcontractor Defendant Dr. Ricci charged her insurer for unnecessary x-rays 69 days after an alleged event without ever examining the child, as part of a broader patter to discredit her after she raised concerns about DHHS misconduct.  *Id.* ¶ 26.  Ms. Grant includes Ms. Sennett as a Defendant in all four counts.  *Id.* ¶¶ 34-56.

### 13.    Allegations Against Crystal Arbour[4]

Crystal Arbour is the Child Care Services Program Manager at DHHS.  *Id.* ¶ 7(g).  Ms. Grant alleges that as part of DHHS's financial punishment, Ms. Arbour falsified public records and withheld federal funding owed.  *Id.* ¶ 21.  Ms. Grant includes Ms. Arbour as a Defendant in all four counts.  *Id.* ¶¶ 34-56.

### 14.    Allegations Against Luke Curtis

---

[3]     The State Defendants say that Ms. Sennett is no longer employed at DHHS.  *Defs.' Mot.* at 7 n.1.  Ms. Grant did not respond to the State Defendants' assertion, *Pl.'s Opp'n* at 1-8, so the Court must accept the allegations of the Plaintiff's complaint against the factual assertions of the State Defendants.

[4]     Ms. Grant spells Crystal Arbour's last name both as Arbour and Arbor.  *Compare Compl.* ¶ 7(g), *with id.* ¶¶ 22, 34-56.  The State Defendants spell Ms. Arbour's last name with a "u".  *State Defs.' Mot.* at 1.  The Court has accepted the State Defendants' spelling on the assumption that Ms. Arbour knows how to spell her own last name.

Luke Curts is Civil Rights and ADA Coordinator at DHHS. *Id.* ¶ 7(j). Ms. Grant alleges that she had previously submitted an ADA/civil rights complaint on December 18, 2021. *Id.* ¶ 12. She further claims that DHHS did not open it until March 1, 2023, and, per DHHS official Luke Curtis, did not substantively respond until 439 days after filing, far beyond ordinary civil rights timelines. *Id.* Ms. Grant alleges that Mr. Curtis failed to seek all responsive communications from Defendant Janet Whitten and improperly furnished Plaintiff's evidentiary materials to licensing/investigative personnel who then used them to build false violations. *Id.* Ms. Grant includes Mr. Curts as a Defendant in count one only. *Id.* ¶¶ 34-56.

## II.     THE POSITIONS OF THE PARTIES

### A.      The State Defendants' Motion to Dismiss

The State Defendants moved to dismiss Ms. Grant's complaint on two bases: failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *State Defs.' Mot.* at 1-2.

#### 1.      Monetary Damages Against the State

The State Defendants first argue that the "claims asserted against DHHS and the official capacity claims against the individual defendants must be dismissed because they are barred by the Eleventh Amendment." *Id.* at 5. The State Defendants say that it "is well settled law that '[n]o cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity.'" *Id.* at 6 (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)); *see*

*also Hill-Spotswood v. Mayhew*, No. 1:14-cv-00206-GZS, 2015 U.S. Dist. LEXIS 10099, at *16 (D. Me. Jan. 29, 2015) (as "arm of the State," DHHS not subject to section 1983 liability)).  Therefore, the State Defendants maintain that "any claim for monetary damages brought under section 1983 against DHHS and the individuals in their official capacities must be dismissed."  *Id.* (citing *Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698, 700 (1st Cir. 1995) ("neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action") (citation omitted)).

### 2.    Injunctive Relief Against the State

Regarding Ms. Grant's claim for injunctive relief, the State Defendants concede that "[a] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  *Id.* at 6 (quoting *Will*, 491 U.S. at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).  At the same time, the State Defendants posit that "the *Ex parte Young* doctrine only confers federal jurisdiction 'over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law.'"  *Id.* (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (internal quotation omitted)).

Moreover, the State Defendants say that "[t]he Complaint neither alleges any continuing violations of federal law by the individual State Defendants, nor seeks to enjoin any of them from violating federal law."  *Id.* (citing *Compl.* at 14-15).  The

13

States Defendants note that "[i]n addition, although the Complaint 'seeks equitable relief against DHHS and, as necessary, against the current DHHS Commissioner in his/her official capacity,' the DHHS Commissioner is not named as a defendant as required by the *Ex parte Young* exception.  *Id.*  Finally, the State Defendants argue that "even if the Court finds that the Complaint sufficiently alleges a continuing violation of federal law, there are no allegations that Cogger, Burnham, Burckhard, Sennett, or Curtis, non-supervisory/non-managerial employees, have the authority/ability to provide the injunctive relief requested." *Id.* at 6-7.

### 3. Procedural and Substantive Due Process

Regarding Ms. Grant's procedural due process claim, the State Defendants point out that Ms. Grant herself acknowledges that she was accorded a hearing by DHHS concerning her license, but "she offers conclusory allegations, without any detail at all, that the process was tainted and that individual State Defendants committed perjury, falsified records, and omitted evidence." *Id.* at 9.  Moreover, if Ms. Grant was dissatisfied with the state hearing process, she could have appealed DHHS's determination to both the Maine Superior Court and the Maine Supreme Judicial Court.  *Id.* (citing 10-144 C.M.R. ch. 1, § VIII(E) (2023); 10-148 C.M.R. ch. 32, § 21(M)(3) (2021); 5 M.R.S. §§ 11001-11002, 11008).[5]

---

[5]     Regarding her stigmatization-plus claim, in their original motion, the State Defendants argued that Ms. Grant was required to request a separate name-clearing hearing before proceeding with a stigmatization-plus claim and she failed to do so.  *Id.* at 9 (citing *Kando v. Rhode Island State Bd. of Elections*, 880 F.3d 53, 62-63 (1st Cir. 2018) (a request for a name-clearing hearing and subsequent denial are essential elements of a stigmatization claim)).  However, in their reply, the State Defendants backed down from this argument, conceding that the de novo hearing on DHHS's issuance of a conditional license "would essentially serve as a name-clearing hearing. *State Defs.' Reply* at 2 n.1.  The State Defendants have therefore withdrawn their argument about the need for a separate name-clearing hearing for Ms. Grant to proceed with a stigmatization-plus claim.

14

As regards Ms. Grant's substantive due process claim, the State Defendants say that "[s]ubstantive due process protects only those interests that implicate one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* at 10 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)) (internal quotations and citations omitted)). The State Defendants conclude that Ms. Grant is likely claiming that the substantive due process violations were executive, not legislative. *Id.* The State Defendants say that "[i]n the case of a substantive due process challenge involving executive action, a plaintiff must first establish that the alleged conduct shocks the conscience—whether the behavior is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* at 10 (quoting *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 346 (1st Cir. 2025)). The State Defendants then say that "[o]nly if the plaintiff satisfies this first element does the inquiry continue to the next step—whether the conduct restricts a protected fundamental right." *Id.* (citing *Foote*, 128 F.4th at 346). With this legal backdrop, the State Defendants argue that Ms. Grant has failed to meet the standards of either prong in the allegations of her complaint. *Id.* at 11-14.

### 4. State Tort Claims

The State Defendants assert that Ms. Grant's state tort claims must fail because she failed to comply with the notice provision of the Maine Tort Claims Act (MTCA), 14 M.R.S. § 8107(1, 3). *Id.* at 14.

If the Court reaches the merits of the state tort claims, the State Defendants first say that Ms. Grant's defamation claim must fail because she failed to refer to any specific defamatory statements. *Id.* at 16. Regarding the tortious interference claim, the State Defendants maintain that Ms. Grant has failed to meet the requirements to sustain such a claim. *Id.*

### 5.  Section 1983 Claim Against Individual Defendants

Regarding Ms. Grant's § 1983 claims against the individual Defendants, the State Defendants point out that "[a]n element of a § 1983 claim is that defendant must be personally and directly involved in causing a violation of the plaintiff's federally protected rights." *Id.* at 16 (quoting *Ramirez-De Leon v. Mujica-Cotto*, 345 F. Supp. 2d 174, 183 (D.P.R. 2004) (citing *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1985)). The State Defendants note "[t]his element requires the plaintiff to show a causal connection between the specific defendant's acts and the alleged constitutional rights deprivation. *Id.* (citing *Ramirez-De Leon,* 345 F. Supp. 2d 183-84 (citing *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 902 (1st Cir. 1988)). The State Defendants then analyze Ms. Grant's complaint to determine whether it satisfies this requirement and find the allegations against each individual Defendant insufficient to sustain her burden. *Id.* at 17-19.

### 6.  Individual Defendants and First Amendment Violation

16

Finally, as for Ms. Grant's First Amendment claim against the individual Defendants, the State Defendants argue that her allegations fail to assert that any of the individual Defendants knew about her March 10, 2023 testimony before the Maine Legislature, and therefore, her First Amendment claim must fail. *Id.* at 19-20. In particular, the State Defendants say that there is no allegation that Crystal Arbour or Pam Sennett were aware of any alleged protected activity by Grant. *Id.* at 20.

### B. Betsey Grant's Response

In response to the State Defendants' motion to dismissal, Ms. Grant urges the Court to conclude that "[d]iscovery, not dismissal, is the appropriate next step." *Pl.'s Opp'n* at 2.

### 1. Injunctive Relief

Regarding the State Defendants' argument about injunctive relief, Ms. Grant notes that she "seeks prospective equitable relief to remedy ongoing violations of federal law, including continued publication of stigmatizing information, unlawful extension of a conditional license beyond regulatory limits, and ongoing retaliation affecting funding, subsidies, and business operations." *Id.* at 4. She contends that "[s]uch claims fall squarely within the *Ex parte Young,* 209 U.S. 123 (1908) exception." *Id.* (citing *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). Furthermore, she says, "the individually named defendants each possess present authority over licensing status, enforcement actions, public postings, funding

determinations, or supervisory oversight sufficient to effect prospective compliance with federal law." *Id.* at 4.

Ms. Grant dismisses "Defendants' argument that non-supervisory employees lack authority to provide injunctive relief" because, she says this determination "is premature and fact bound." *Id.* Ms. Grant notes that she "alleges coordinated conduct across supervisory and investigative personnel, including enforcement, publication, funding, and adjudicative functions," and she reiterates that "[d]iscovery, not dismissal, is the proper mechanism to determine the scope of authority and responsibility." *Id.*

### 2. Immunity

Second, Ms. Grant notes that she is suing "the individual defendants in their personal capacities for damages under 42 U.S.C. § 1983," and "[s]overeign immunity does not shield state officials from personal liability for constitutional violations." *Id.* (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)).

### 3. Procedural Due Process

Ms. Grant responds to the State Defendant's argument that her procedural due process claim must fail because DHHS held a hearing. *Id.* She asserts that she has alleged both property and liberty interests subject to procedural due process protection, and she says that State Defendants' "argument that 'a hearing occurred' does not defeat a procedural due process claim where the process itself is alleged to be constitutionally defective." *Id.* Ms. Grant observes that the complaint "alleges that DHHS officials predetermined outcomes and acted with retaliatory bias; relied

18

on falsified, incomplete, or tainted evidence; omitted exculpatory information; publicly branded Plaintiff as noncompliant before adjudication; and maintained a conditional license beyond the twelve-month regulatory cap." *Id.* at 4-5 (citing *Compl.* ¶¶ 13-15, 18-20, 42-44).

Ms. Grant posits that "[d]ue process requires a meaningful opportunity to be heard before an impartial decisionmaker, *id.* at 5 (citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)), and she says that "[a] hearing infected by retaliation, fabrication, and bias does not satisfy constitutional requirements." *Id.* (citing *Withrow v. Larkin,* 421 U.S. 35, 47 (1975)).

### 4.    Stigmatization-Plus

Turning to the stigmatization-plus allegation, Ms. Grant writes that State Defendants' "reliance on Plaintiff's failure to request a separate name-clearing hearing is misplaced." *Id.* at 5. Ms. Grant claims, without citation, that "[w]here stigmatization is embedded in licensing enforcement and public postings that alter legal status, the deprivation itself triggers due process protections" and she therefore "plausibly alleges stigma-plus without adequate process." *Id.*

### 5.    Substantive Due Process

Ms. Grant acknowledges that "substantive due process claims are narrow;" however, she says that "they are viable where officials abuse governmental authority for retaliatory purposes" and here, she "alleges not mere regulatory error, but an orchestrated campaign to punish protected speech through falsification, intimidation, selective enforcement, and economic destruction." *Id.* Moreover, she claims, again

19

without authority, that whether "conduct shocks the conscience is a factual matter," and "dismissal is inappropriate where the complaint plausibly alleges deliberate, abusive misuse of government power and authority." *Id.*

### 6.      First Amendment Retaliation

Ms. Grant observes that she has alleged that she engaged in protected activity when she "testified before the Maine Government Oversight Committee, filed civil rights and ADA complaints, and made mandated reports of child endangerment, conduct squarely protected by the First Amendment." *Id.* at 6.  Ms. Grant says that "[f]ollowing this activity, [she] was subjected to a series of adverse actions, including repeated and escalating investigations, public stigmatization, licensing sanctions, the withholding of subsidies and removal from food program participation, and substantial economic harm to her business." *Id.* Ms. Grant states that "[c]ausation is plausibly alleged through the close temporal proximity between [her] protected speech and [State] Defendants' actions, statements and conduct by DHHS leadership, coordinated enforcement activity, and a sustained pattern of retaliation directed at Plaintiff after she spoke out." *Id.*  Ms. Grant says that "[a]t the pleading stage, Plaintiff is not required to prove retaliatory motive; she need only allege facts supporting a reasonable inference that her protected conduct was a motivating factor, which she has done." *Id.* (citing *Najas Realty, LLC v. Seekonk Water Dist.,* 821 F.3d 134, 141 (1st Cir. 2016)).

### 7.      Individual Defendants

20

Ms. Grant asserts that she has alleged sufficient facts about "who did what, when, and why" against the individual Defendants to withstand dismissal. *Id.*

### 8.    State Tort Claims

Regarding the State Defendants' argument about the MTCA notice requirement, Ms. Grant writes, without citation, that this issue "implicates factual questions concerning accrual, continuing violations, and equitable tolling." *Id.* at 7. She says that "[t]hese are issues that require a full factual record and cannot be adjudicated on a motion to dismiss," and that "[c]ourts consistently hold that questions of accrual and tolling are typically inappropriate for resolution on a Rule 12(b)(6) motion where the plaintiff has alleged facts supporting their claim." *Id.*

Finally, Ms. Grant posits that the complaint contains sufficient factual allegations of the commission of state torts to withstand dismissal. *Id.*

### C.    The State Defendants' Reply

#### 1.    Injunctive Relief Against DHHS and Official Capacity Claims Against Individual Defendants

The State Defendants note that "nowhere in the Complaint does [Ms. Grant] allege any continuing violations of federal law by the individual State Defendants, nor does she seek to enjoin any of them from violating federal law[; r]ather, throughout the Complaint, [Ms.] Grant states that she is seeking 'injunctive and declaratory relief from DHHS.'" *State Defs.' Reply* at 1 (citing *Compl.* ¶¶ 3, 6, 8, 46, Sections VII, XD). As such, the demand for injunctive relief, which is made against DHHS, must be dismissed as violative of the Eleventh Amendment, and the claims

21

against the individual Defendants must also be dismissed because she does not allege any continuing violations. *Id.* at 2.

### 2. Due Process Claims

The State Defendants point out that Ms. Grant does not dispute that she was given a de novo hearing on DHHS's proposed issuance of a conditional license for her daycare facility, and the State Defendants note that Ms. Grant has not contended that the hearing officer was biased or that any of the procedural safeguards, such as the right to call witnesses, introduce documents, or cross-examine adverse witnesses, was denied. *Id.* Instead, the State Defendants say that Ms. Grant has criticized the testimony of biased DHHS witnesses, and they note that Ms. Grant did not allege that she brought these due process issues to the attention of the hearing officer nor did she appeal the hearing officer decision to the Maine Superior or Supreme Courts. *Id.* at 2-3. The State Defendants say that Ms. Grant has failed in her procedural due process claim. *Id.* at 3.

The State Defendants argue that Ms. Grant may not proceed with a substantive due process claim because her claim is grounded in alleged violations of the First and Fourteenth Amendments. *Id.* at 3. They quote the First Circuit as ruling that "[s]ubstantive due process is an inappropriate avenue of relief when the governmental conduct is covered by a specific constitutional provision." *Id.* (quoting *Pagan v. Calderon*, 448 F.3d 16, 33 (1st Cir. 2006)). Furthermore, contrary to Ms. Grant's argument, the State Defendants cite caselaw where trial courts have resolved on motions to dismiss whether the facts amount to "conscience shocking" behavior. *Id.* at 4. The State Defendants then argue that the facts in the complaint do not

22

constitute conscience shocking behavior, and they note that Ms. Grant was allowed to continue to operate her business, albeit with a conditional license, throughout this period. *Id.* at 4-5.

### 3.    Notice of Claim under the MTCA

The State Defendants posit that the Court need not reach the issues of accrual, continuing violations, and equitable tolling as Ms. Grant has claimed, because perfection of notice is Ms. Grant's burden and is a jurisdictional issue and Ms. Grant has failed to demonstrate that she has ever complied with the Notice of Claim requirements of the MTCA or asserted that she has good cause for failing to do so. *Id.* at 5-6.

### 4.    Individual Liability under § 1983

The State Defendants reject Ms. Grant's claim that her complaint sets forth what each individual Defendant did, when he or she did it, and why he or she did it. *Id.* at 6.  Instead, from the State Defendants' perspective, the complaint consists of "broad legal conclusions about all of the individual State Defendants as a group." *Id.* Because of this omission in the complaint, the State Defendants urge the Court to dismiss the claims against each individual Defendant under § 1983. *Id.*

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss: Rule 12(b)(6)

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)).  Plausible means "something more than

merely possible" or "merely consistent with a defendant's liability." *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (quotation marks and citations omitted) (first quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), and then quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). Although this does not require "detailed factual allegations," the facts pleaded must at least "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, a facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, dismissal is appropriate if a complaint's well-pleaded facts do not "possess enough heft to 'sho[w] that [the plaintiff] is entitled to relief.'" *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (first alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Assessing a complaint's plausibility is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In the First Circuit, district courts apply a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P. R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a

24

court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

"Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*) (citing *Twombly*, 550 U.S. at 555).

## B.    Motion to Dismiss: Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows the filing of a motion to dismiss for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1); *see e.g.*, *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 138 (1st Cir. 2004). Rule 12(b)(1) is "the proper vehicle for addressing a variety of jurisdictional questions, including sovereign immunity." *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 360 (D. Me. 2012) (citing *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001) ("[Rule 12(b)(1)] is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including "sovereign immunity"). The burden falls on the party invoking jurisdiction "clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction." *Marcello v. Maine*, 464 F. Supp. 2d 38, 41 (D. Me. 2006) (citing *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996)). Furthermore, the Court may consider extrinsic materials when

ruling on a motion to dismiss under Rule 12(b)(1). *Id.* (citing *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction . . . the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff . . . . In addition, the court may consider whatever evidence has been submitted . . ..")).

## IV.    DISCUSSION

### A.    The Claims Against DHHS and its Employees in Their Official Capacities

#### 1.    The Court Dismisses Claims for Retroactive Injunctive Relief and Monetary Damages Against DHHS and its Employees in Their Official Capacities Under Rule 12(b)(6)

The State Defendants worry that Ms. Grant is asserting monetary damages and a retrospective injunctive relief against the State Defendants. *Defs.' Mot.* at 6 ("Therefore, any claim for monetary damages brought under section 1983 against DHHS and the individuals in their official capacities must be dismissed"); *id.* ("[T]he *Ex parte Young* doctrine only confers federal jurisdiction 'over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law'") (citing *Seminole Tribe*, 517 U.S. 44).

The complaint in this case does not make a claim for monetary damages or retroactive injunctive relief against DHHS or its employees in their official capacities, and Court never interpreted Ms. Grant's complaint to the contrary. *Compl.* at 1-17. In their response, the Plaintiffs reiterate that they are not making any such claims. *Pl.'s Opp'n* at 4 ("Plaintiff seeks prospective equitable relief to remedy ongoing

26

violations of federal law"); *id.* ("Plaintiff sues the individual defendants in their personal capacities for damages under 42 U.S.C. § 1983"). If she had made those claims, they would be barred. *Nieves-Marquez*, 353 F.3d at 124 (There is "[n]o cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity"); *see also Hill-Spotswood*, 2015 U.S. Dist. LEXIS 10099, at *16 (as "arm of the State," DHHS not subject to section 1983 liability). It seems clear, based on the complaint and Ms. Grant's clarifying response, that she is seeking only prospective declaratory and injunctive relief against DHHS and its employees in their official capacities and is seeking monetary damages against DHHS employees only in their personal capacities.

    **2.**     **The Court Dismisses Ms. Grant's Claims for Prospective Injunctive Relief Against DHHS and Its Employees in Their Official Capacities Under Rule 12(b)(6)**

In her complaint, Ms. Grant demands that the Court issue an injunction as follows:

An injunction requiring DHHS to:

    a. Immediately cease publishing, maintaining, or disseminating false or stigmatizing statements about Plaintiff and Tiny Tikes Daycare on the State's websites or communications and to correct and remove defamatory postings, including on "childcarechoices.me;"

    b. Correct Plaintiff's public licensing record to accurately reflect her compliance status, expunge false violations, and acknowledge the October 14, 2022, waiver from former OCFS Director Todd A. Landry related to documentation requirements;

    c. Maintain the recently modified Plaintiff's license to full, unrestricted status and prohibit future retaliation;

    d. Comply with the twelve-month maximum for conditional licenses (10-148 C.M.R. Ch. 32, § 2(E)(6)) and the requirements of 22 M.R.S. § 7802(1)(C);

    e. Take all steps within DHHS control to remove retaliatory impediments to Plaintiff's participation in foster care subsidies and other programs and to coordinate in good faith with relevant agencies to remedy the harm to Plaintiff's participation in the federal food program and previously approved expansion grant.

*Compl.* at 15.  In their motion, the State Defendants protest that Ms. Grant failed to name the individual within DHHS who could put the requested injunction into effect, namely the Commissioner.  *Defs.' Mot.* at 6-7.

> The critical language in *Ex Parte Young*, 209 U.S. 123 (1908) is:
>
> The various authorities we have referred to furnish ample justification for the assertion that individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Id.* at 155-56.  The State Defendants have a point in arguing that the Defendants named in this lawsuit would not have the authority to implement the changes in DHHS policy as the complaint demands.  It would seem that the Commissioner of DHHS, who is not a Defendant in this lawsuit, not a DHHS investigator or out-of-home investigator, would be the individual authorized to enforce an injunction within DHHS for the Ms. Grant's requested relief.

Although Ms. Grant argues that each of the Defendants in their official capacities has the right to enforce the injunctive relief she is demanding, Ms. Grant makes no such allegation in her complaint, and the Court cannot infer that the list of

28

DHHS Defendants, ranging from the Chief Operating Officer to Out-of-Home Investigators, would have the authority to direct the Agency to make the policy changes necessary to enforce the requested injunction. Even if the Chief Operating Officer or Director of DHHS could conceivably have such authority, the requested injunction raises policy judgments that would appear to require approval by the Commissioner. Thus, the Court agrees with the Defendants that Ms. Grant—for whatever reason—has decided not to sue the correct person, the Commissioner, and instead to sue officials who likely do not have the authority to make broad policy decisions for DHHS.

In addition, for the reasons set forth above, Ms. Grant's claim for injunctive relief against DHHS itself clearly fails. The *Ex parte Young* exception does not allow lawsuits against DHHS itself because such a lawsuit is barred by the Eleventh Amendment and allows lawsuits against DHHS employees in their official capacity only because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). To the extent Ms. Grant is claiming injunctive relief directly against DHHS and its employees in their official capacities, it must fail.

### 3. Section 1983 Claims against Individual Defendants Survive Rule 12(b)(6) Scrutiny

The Court turns to whether there are sufficient allegations in the complaint against individual Defendants to withstand dismissal. The complaint alleges that Ms. Grant engaged in several instances of protected speech that caused the DHHS

employees to retaliate: (1) she made mandated allegations of child endangerment, (2) she communicated concerns about DHHS misconduct and mishandling of funds to state officials, (3) she filed an ADA/Civil Rights complaint, (4) she submitted grievances to oversight entities, and (5) she testified publicly on March 10, 2023, before the Government Oversight Committee. *Compl.* ¶ 35. Some of these allegations are not further explained. The allegations that she communicated concerns to state officials and filed grievances to oversight entities are not further explained in the complaint. Ms. Grant alleges that she made mandatory reports of child endangerment to DHHS from 2019 to 2023, *id.* ¶ 9, but the relationship between her reports and DHHS retaliation is not well explained. Similarly, Ms. Grant alleges that she filed an ADA/Civil Rights complaint on December 18, 2021, and DHHS opened it on March 1, 2023, just before she testified before the Maine Legislature. *Id.* ¶ 12. Again, the relationship between her ADA/Civil Rights complaint and the subsequent retaliation is not clear. Nevertheless, the question before the Court in a motion to dismiss is whether Count One should be dismissed in its entirety, not whether aspects of the allegations survive dismissal, a matter better left for summary judgment.

To make out a claim for First Amendment retaliation, a plaintiff must show that "his conduct was constitutionally protected, and that this conduct was a 'substantial factor' - or, to put it in other words, that it was a 'motivating factor'". *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 16 (1st Cir. 2011); *Centro Medico del Turabo, Inc. v. Feliciano de Melcio*, 406 F.3d 1, 10 (1st Cir. 2005). "[A]s a general matter, the 'First

Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out.'" *Pomponio v. Town of Ashland*, No. 15-cv-10253, 2016 U.S. Dist. LEXIS 14366, at \*10 (D. Mass. Feb. 5. 2016) (quoting *Decotiss v. Whittemore*, 635 F.3d 22, 29(1st Cir. 2011)).

Here, the State Defendants have not questioned whether Mr. Grant's March 10, 2023 testimony before the Maine Legislature constituted protected speech. *See Gonzalez-Droz*, 660 F.3d at 16; *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) (describing "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"). Nor have the State Defendants argued that a hearing held by a state legislative committee does not qualify as a type of public forum. *See McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79, 89 (D. Me. 2022) (finding that the First Amendment protected the rights of speakers at a school board meeting open to the public).

The question is whether Ms. Grant has alleged sufficient facts to meet the second prong: whether her testimony was a substantial or motivating factor in the subsequent DHHS actions against her. If there is a "temporal proximity" between the protected speech and the allegedly retaliatory conduct, this alone may be sufficient to "raise an inference of causation." *Gonzalez-Droz*, 660 F.3d at 16. However, the temporal proximity "must be close." *Id.*; *see Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) (holding that a "gap of several months" between protected

31

speech and allegedly retaliatory conduct was insufficient to prove retaliation in Title VII context); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (finding insufficient temporal proximity in the age discrimination context when nine months had elapsed between protected conduct and alleged retaliation); *see also Rosenfeld v. Egy*, 346 F.3d 11, 15-17 (1st Cir. 2003).

Here, Ms. Grant alleges that following her March 10, 2023 testimony, DHHS issued a Notice of Conditional License on June 26, 2023, held a hearing on November 28, 2023, and upheld the conditional license on February 7, 2024. *Compl.* ¶ 13. For some of the alleged actions, the mandatory reporting and the ADA/Civil Rights complaint, the length of time between the protected speech and the alleged retaliatory action is too distant. By contrast, the temporal proximity of "several months" between March and June 2023 is on the edge of allowing an inference of causation; however, it is also likely that the State Defendants took some actions before issuing the Notice of Conditional License to investigate and corroborate the need for a conditional license. Accepting the allegations in Ms. Grant's complaint, the Court draws an inference that there is a close enough temporal connection between her March 10, 2023 legislative testimony and the State Defendants' alleged retaliation to infer that her testimony was a substantial or motivating factor for the alleged retaliation. Of course, upon discovery, it may well turn out that this inference is or is not justified.

The Court now addresses whether the allegations against the individual Defendants are sufficient to allow Ms. Grant to maintain her First Amendment retaliation claim against each individual. Ms. Grant is suing the following individual

Defendants: Jane S. Whitten, John Feeney, Bobbi Johnson, Cheryl Cogger, Elizabeth Burnham, Jodie Burckhard, Crystal Arbour, Pam Sennett, and Luke Curtis. *Compl.* at 1-17. Having isolated the specific allegations against each Defendant, the Court concludes with some compunction that Ms. Grant has alleged sufficient facts to withstand the State Defendants' motion to dismiss count one. The Court's hesitation is with Ms. Grant's allegations against (1) John Feeney, whose financial punishment of Ms. Grant is alleged to have begun seven years ago, (2) Bobbi Johnson, whose September 4, 2024 advice to Ms. Grant about pursuing review and appeal was long after the June 26, 2023 notice of conditional license, the November 28, 2023 hearing, and the February 7, 2024 decision upholding the conditional license, (3) Jodie Burckhard, who resigned in June 2021, (4) Pam Sennett to the extent Ms. Grant's claim rests on allegations similar to the allegations against Dr. Ricci,[6] and (5) Luke Curtis to the extent that his failure to open Ms. Grant's ADA/Civil Rights complaint took place before her legislative testimony. Nevertheless, the Court concludes that it is preferable to address its qualms in a motion for summary judgment, after the facts have been developed.

**B.    The Court Dismisses the Procedural and Substantive Due Process Claims—Count Two—Under Rule 12(b)(6)**

The Due Process Clause prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This guarantee has both substantive and procedural components." *Gonzalez-Droz*, 660 F.3d at 13 (citing *Pagan*, 448 F.3d at 32).

---

[6]    *See Order on Dr. Lawrence Ricci's Mot. to Dismiss* (ECF No. 35).

33

### 1.    Procedural Due Process

"To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" *Id.* (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006) (alterations, internal quotation marks, and citations omitted)).  In *Gonzalez-Droz*, the First Circuit affirmed the principle that when the state removes a person's license and takes away his or her livelihood, it has affected a property interest, requiring due process.  660 F.3d at 13.  The Court assumes, without deciding, that the restriction of a similar license, in this case the license to operate a childcare facility, satisfies the requirement of a property interest under *Gonzalez-Droz*.

The question then turns to "whether the process leading to that deprivation passes constitutional muster."  *Id.*  "The basic guarantee of procedural due process is that, 'before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "No rigid taxonomy exists for evaluating the adequacy of state procedures in a given case; rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'"  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In analyzing the complaint, it is difficult to comprehend what procedural due process rights Ms. Grant is claiming she was denied.  The complaint reveals she was

34

given notice of the conditional license, a hearing, and a recommended decision was issued. *Compl.* ¶ 13. Regarding her procedural due process claim, Ms. Grant alleges:

> Defendants deprived Plaintiff of these interests without constitutionally sufficient process by, among other things: predicating licensing actions on biased, incomplete, or falsified evidence; publishing false statements on an official State website prior to and without adequate findings; refusing to correct acknowledged inconsistencies (including claiming "satisfied requirements" while maintaining conditions); and unlawfully maintaining a conditional license beyond the twelve-month limit set by rule (10-148 C.M.R. Ch. 32, § 2(E)(6)).

*Id.* ¶ 43. She also claims:

> Defendants also engaged in arbitrary, capricious, and conscience-shocking conduct by intentionally misrepresenting compliance status, manipulating licensing and funding mechanisms to punish protected speech, and weaponizing adjudicative proceedings infected by bias and retaliation.

*Id.* ¶ 44.

But, as the First Circuit has explained, "[t]he plaintiff's criticism overlooks that due process does not invariably require a hearing before the state can interfere with a protected property interest." *Gonzalez-Droz*, 660 F.3d at 14. Here, DHHS accorded Ms. Grant a hearing and apparently rights of appeal. Although Ms. Grant criticizes the testimony and evidence that was presented, she does not allege that the hearing officer was biased or that the usual forms of a hearing, such as the right to call and cross-examine witnesses, seek to introduce exhibits, receive a written explanation for the decision, the right to appeal, were denied to her. Instead, she seems to be conflating her dissatisfaction with the results of the hearing with the process that led to the decision. As the First Circuit has written, "[a] key datum is whether 'some form of hearing is [provided] before an individual is *finally* deprived of [the] interest.'" *Gonzalez-Droz*, 660 F.3d at 14 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333

35

(1976)); *see Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998). Ms. Grant was accorded "some form of hearing" before DHHS took action against her, and the Court concludes that Ms. Grant has not stated a claim for deprivation of procedural due process.

### 2. Substantive Due Process

"The constitutional guarantee of substantive due process 'functions to protect individuals from particularly offensive actions on the part of government officials.'" *Gonzalez-Droz*, 660 F.3d at 15-16 (quoting *Pagan*, 448 F.3d at 32). "In other words, 'a substantive due process claim implicates the essence of state action rather than its modalities.'" *Id.* at 16 (quoting *Amsden*, 904 F.2d at 753). The plaintiff bears the burden of showing that the challenged actions were "so egregious as to shock the conscience." *Id.* (quoting *Pagan*, 448 F.3d at 32). In the First Circuit's words, "[t]o sink to this level, the challenged conduct must be 'truly outrageous, uncivilized, and intolerable.'" *Id.* (quoting *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir. 1999)).

Here, Ms. Grant has set forth only a skeletal set of facts, as opposed to conclusory argument, about what the Defendants did or failed to do to constitute a violation of her rights to substantive due process. As with the First Circuit in *Gonzalez-Droz*, the Court concludes that the allegations in the complaint do not "remotely approach the level of a substantive due process violation." *Id.* at 16.

### C. The Court Dismisses State Law Claims—Counts III and IV— under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction Given The Notice of Claim Issue

36

Maine statutory law sets forth the usual rule that governmental entities are not subject to civil lawsuit and requires that a litigant comply with the statute to bring a lawsuit under a permissible exception:

> Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter.

14 M.R.S. § 8103(1).  The MTCA creates a separate provision for claims against state government employees:

> Except as otherwise expressly provided by section 8111[7] or by any other law, and notwithstanding the common law, the personal liability of an employee of a governmental entity for negligent acts or omissions within the course and scope of employment shall be subject to a limit of $10,000 for any such claims arising out of a single occurrence and the employee is not liable for any amount in excess of that limit on any such claims.

14 M.R.S. § 8104-D.  The MTCA also includes a Notice of Claim requirement:

> Within 365 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 365-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing:
>
> > A. The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;
> > B. A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
> > C. The name and address of any governmental employee involved, if known;
> > D. A concise statement of the nature and extent of the injury claimed to have been suffered; and
> > E. A statement of the amount of monetary damages claimed.

---

[7]    14 M.R.S. § 8111 creates categories of personal immunity for state employees.

37

14 M.R.S. § 8107(1).  The MTCA details how the notice is to be given:

> If the claim is against the State or an employee thereof, copies of the notice shall be addressed to and filed with the state department, board, agency, commission or authority whose act or omission is said to have caused the injury and the Attorney General.

14 M.R.S. § 8107(3).  The MTCA also provides that a claim is barred if the Notice of Claim requirements are not met:

> No claim or action shall be commenced against a governmental entity or employee in the Superior Court unless the foregoing notice provisions are substantially complied with.

14 M.R.S. § 8107(4).

Courts in both the state of Maine and the First Circuit have dismissed claims under the MTCA if the plaintiff has failed to comply with the Notice of Claim provisions of the MTCA.  *See Porter v. Philbrick-Gates*, 2000 ME 35, ¶ 4, 745 A.2d 996 ("Failure to comply bars the suit"); *Powell v. Dep't of Health and Human Servs.*, No. York-06-705, 2007 Me. Unpub. LEXIS 83, at *1 (Jun. 7, 2007); *Morse v. Anderson*, CV-15-121, 2016 Me. Super. LEXIS 146, at *3-4 (Me. Super. Aug. 2, 2016); *Pardue v. Raymond*, 2:23-cv-00332-LEW, 2025 U.S. Dist. LEXIS 128765, at *30 (D. Me. Jul 8, 2025).  Here, there is no evidence that Ms. Grant ever complied with the Notice of Claim provision of the MTCA, or said differently, if she filed a Notice of Claim, she has not brought it to the attention of this Court.  In contrast, the State Defendants filed a sworn declaration executed by Amy J. Oliver, a research assistant/paralegal with the Maine Office of Attorney General, to confirm that there is no record of a

Notice of Claim filed by Ms. Grant or Tiny Tikes Daycare from 2018 through December 16, 2025. *Defs.' Mot.*, Attach. 1, *Decl. of Amy J. Oliver* ¶¶ 1-3.[8]

"The MTCA does provide a carve-out for late notices where 'a claimant shows good cause why notice could not have reasonably been filed within the 365-day limit.'" *Pardue*, 2025 U.S. Dist. LEXIS 128765, at *30 (quoting 14 M.R.S. § 8107(1)). Ms. Grant claims that the MTCA notice requirement issue "implicates factual questions concerning accrual, continuing violations, and equitable tolling." *Pl.'s Opp'n* at 7. But Ms. Grant has not explained how any of these issues apply when there is no evidence that she ever filed a Notice of Claim. Furthermore, in her opposition, Ms. Grant did not raise any good faith arguments as to why she filed late notice since there is nothing in the record to suggest that she filed any notice at all. As such, the general rule applies and Ms. Grant's state tort claims are barred for failing to comply with the Notice of Claim requirement of 14 M.R.S. § 8107(1). Her state law claims against DHHS and the individual Defendants in their official and individual capacities are barred. *Pardue*, 2025 U.S. Dist. LEXIS 128765, at *30 ("Ms. Pardue also does not raise any good cause arguments as to why she filed a late notice in 2022 and has yet to file a notice relating to her claims from her 2023 arrest. Because Ms.

---

[8] Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). Here, whether Ms. Grant filed a Notice of Claim is central to her state tort claims.

Pardue has failed to comply with the requirements of the MTCA her state claims are barred").

If Ms. Grant is unable to maintain her state tort claims against DHHS and its employees acting in an official capacity, she is also unable to maintain these claims against its employees in their individual capacities. *Fortin v. Titcomb*, 671 F.3d 63, 68 (1st Cir. 2012) As the First Circuit explained, "the Law Court has previously construed the term 'employee' in another section of the MTCA to include a government employee in his or her personal capacity." *Id.* That is, in *Mueller v. Penobscot Valley Hosp.*, the Law Court rejected a plaintiff's argument that the notice requirement of 14 M.R.S. § 8107(4) referring to "a governmental entity or employee," did not apply to claims against employee as an individual. 538 A.2d 294, 297 (Me. 1988). Thus, under *Mueller*, Ms. Grant's state tort claims against DHHS and its employees in their official and individual capacities are barred due to her failure to comply with the MTCA notice requirements.

## V.   CONCLUSION

The Court GRANTS in part and DENIES in part State Defendants' Motion to Dismiss (ECF No. 18):

- The Court GRANTS under Federal Rule of Civil Procedure 12(b)(6): Defendant Maine Department of Health and Human Services' Motion to Dismiss the Department; Defendants Jane S. Whitten, John Feeney, Bobbi Johnson, Cheryl Cogger, Elizabeth Burnham, Jodie Burckhard, Crystal Arbour, Pam Sennett, and Luke Curtis's motion to dismiss the

claims against them in their official capacities; and State Defendants' motion to dismiss the procedural and substantive due process claims.

- The Court DENIES Defendants Jane S. Whitten, John Feeney, Bobbi Johnson, Cheryl Cogger, Elizabeth Burnham, Jodie Burckhard, Crystal Arbour, Pam Sennett, and Luke Curtis's motion to dismiss them in their individual capacities as to Count One—First Amendment Retaliation.

- The Court further GRANTS under Federal Rule of Civil Procedure 12(b)(1) the Defendants' motion to dismiss Counts Three and Four for lack of subject matter jurisdiction for failure to comply with the MTCA notice requirements.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of August, 2026